# 17-2915-cr

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

———

UNITED STATES OF AMERICA,
*Appellee,*

-vs-

ARTURO CASTRO,
*Defendant-Appellant.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## OPENING BRIEF FOR DEFENDANT-APPELLANT ARTURO CASTRO

TERRY S. WARD
*Federal Defender*

James P. Maguire
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
(203) 498-4200

TO BE ARGUED BY:
JAMES P. MAGUIRE
*Assistant Federal Defender*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES ............................................................ ii

JURISDICTIONAL STATEMENT ................................................... iv

STATEMENT OF THE ISSUES...................................................... v

STANDARD OF REVIEW ............................................................ vi

PRELIMINARY STATEMENT ........................................................1

STATEMENT OF THE CASE...........................................................2

SUMMARY OF THE ARGUMENT ..................................................7

ARGUMENT ................................................................................8

I.  THE DISTRICT COURT IMPROPERLY IMPOSED A SUPERVISED
    RELEASE CONDITION REQUIRING MR. CASTRO TO SUBMIT TO
    SUSPICIONLESS SEARCHES OF HIS PERSONAL INFORMATION........8

    a.  Conditions of Release Must Conform to Statutory Requirements. .............8

    b.  Conditions of Release Must Withstand Constitutional Scrutiny. ................9

    c.  Suspicionless Search Conditions Must Pass a "Special Needs" Test.........10

    d.  The Suspicionless Search Condition Here Fails the *Lifshitz* Test. .............15

        1.  The search condition authorizes broad suspicionless searches of
            materials at the heart of Fourth Amendment protections. ....................16

        2.  The special needs of supervision are relatively attenuated in this case.17

        3.  Mr. Castro's expectation of privacy is limited by his status. ................20

        4.  The sweeping search condition is maximally intrusive and minimally
            effective—the opposite of Lifshitz's instruction. ..................................20

II. THE MONITORING CONDITION IS OVERBROAD AND VIOLATES
    *LIFSHITZ*……………………... ..........................................................22

CONCLUSION .................................................................................24

CERTIFICATIONS ...........................................................................25

# TABLE OF AUTHORITIES

**Cases**

City of Indianapolis v. Edmond,
    531 U.S. 32 (2000) ........................................................................18

Ferguson v. City of Charleston,
    532 U.S. 67 (2001) ........................................................................18

Florida v. Jimeno,
    500 U.S. 248 (1991) ......................................................................16

Griffin v. Wisconsin.,
    483 U.S. 868 (1987) ..................................................................passim

Illinois v. Lidster,
    540 U.S. 419 (2004) ......................................................................19

Malvasi v. U.S. Dep't of Prob.,
    246 F. App'x 11 (2d Cir. 2007) ...................................................15

Nat'l Treasury Employees Union v. Von Raab,
    489 U.S. 656 (1989) ......................................................................14

New Jersey v. TLO,
    469 U.S. 325 (1985) ......................................................................18

Nicholas v. Goord,
    430 F.3d 652 (2d Cir. 2005) .........................................................19

Roe v. Marcotte,
    193 F.3d 72 (2d Cir. 1999) ...........................................................19

Samson v. California,
    547 U.S. 843 (2006) .................................................................14, 15

United States v. Abrar,
    58 F.3d 43 (2d Cir. 1995) ...............................................................8

United States v. Amerson,
    483 F.3d 73 (2d Cir. 2007) .......................................................passim

United States v. Cavera,
    550 F.3d 180 (2d Cir. 2008) ..........................................................vi

United States v. Dupes,
    513 F.3d 338 (2d Cir. 2008) ..........................................................vi

United States v. Ganias,
    755 F.3d 125 (2d Cir. 2014) .....................................................16, 17

United States v. Lifshitz,
    369 F.3d 173 (2d Cir. 2004) .....................................................passim

United States v. Lifshitz,
  1:01cr00203-RPP (S.D.N.Y. July 7, 2004) ........................................................14

United States v. Myers,
  426 F.3d 117 (2d Cir. 2005) ...............................................................................9

United States v. Reyes,
  283 F.3d 446 (2d Cir. 2002) ..............................................................................20

United States v. Stabile,
  633 F.3d 219 (3d Cir. 2011) ..............................................................................22

**Statutes**

18 U.S.C. § 2422(b) ..........................................................................................1, 2

18 U.S.C. § 2423(b) ..............................................................................................2

18 U.S.C. § 2251(a) ..............................................................................................2

18 U.S.C. § 2252A(a) ............................................................................................2

18 U.S.C. § 3231 ..................................................................................................iv

18 U.S.C. § 3553(a) ......................................................................................v, 8, 9

18 U.S.C. § 3563(b) ..............................................................................................8

18 U.S.C. § 3583(d) ......................................................................................passim

18 U.S.C. § 3742(a) ..............................................................................................iv

28 U.S.C. § 1291 ..................................................................................................iv

**Other**

Conn. Gen. Stat. § 53a-71 ...................................................................................2

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Connecticut (Underhill, D.J.) had subject matter jurisdiction under 18 U.S.C. § 3231. On September 13, 2017, the District Court entered its judgment sentencing Defendant-Appellant Arturo Castro to 120 months' imprisonment followed by 10 years of supervised release. Mr. Castro filed a timely notice of appeal on September 18, 2017. This Court has appellate jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

Pursuant to 18 U.S.C. § 3583(d), a district court judge may impose a condition of supervised release in addition to the standard conditions, provided that the condition "is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)" and "involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth" in these provisions of 18 U.S.C. § 3553.

The question on appeal is whether the district court abused its discretion by imposing a condition requiring Mr. Castro to "submit all photographic equipment, personal computers, media storage devices, or other Internet capable devices and related equipment, owned, controlled or used by them to a compliance review conducted by the U.S. Probation Office or its designee at a reasonable time and reasonable manner without prior notice, and without suspicion or search warrant."

**<u>STANDARD OF REVIEW</u>**

This Court reviews sentences for reasonableness. *United States v. Cavera*, 550 F.3d 180, 187-88 (2d Cir. 2008) (en banc). "The propriety of conditions of supervised release are judged by an abuse of discretion standard." *United States v. Dupes*, 513 F.3d 338, 342–43 (2d Cir. 2008). This Court has further articulated that while the sentencing court has broad discretion in imposing conditions, "its discretion is not untrammeled and our Court will carefully scrutinize unusual and severe conditions." *Id*. at 43 (citations and internal quotation marks omitted).

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

Docket No. 17-2915-cr

————

UNITED STATES OF AMERICA,

*Appellee,*

-vs-

ARTURO CASTRO,

*Defendant-Appellant.*

————

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## **PRELIMINARY STATEMENT**

The defendant, Mr. Arturo Castro, is a 53-year-old professional. In June of 2017, Mr. Castro pled guilty to using an interstate facility to persuade a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b), in connection with his interactions with a 15-year-old in 2014. The district court sentenced Mr. Castro to 120 months' imprisonment, the mandatory minimum, and 10 years of supervised release. Although Mr. Castro has resided in this country for nearly 30 years as a lawful permanent resident, he is not a citizen of the United States and faces likely deportation as a result of his offense.

Additionally, the district court imposed special conditions of release. Two such conditions were that that Mr. Castro consent to monitoring of his computer use and that his property be subject to search by Probation based upon reasonable suspicion of a violation of the terms of his release. Over and above these conditions—and over Defendant's objection—the district court imposed a further condition entitling Probation to conduct invasive and suspicionless searches of any digital storage medium in Mr. Castro's possession. In light of available alternative conditions, the isolated nature of this case, Mr. Castro's comparatively low risk of recidivism, and the constitutional rights implicated, this sweeping and invasive condition was not lawfully imposed. Additionally, the computer search condition is overbroad.

## STATEMENT OF THE CASE

In December of 2016, the defendant, Mr. Arturo Castro, was arrested in the Northern District of Illinois, where he resided, on a complaint issued in the District of Connecticut by Magistrate Judge Sarah Merriam alleging violations of 18 U.S.C. §§ 2422(b), 2423(b), 2251(a), and 2252A(a). Following Mr. Castro's arrest, but before his presentation on these charges in the District of Connecticut, a grand jury in Connecticut returned an indictment charging Mr. Castro with violating 18 U.S.C. §§ 2422(b), 2423(b), and 2252A(a) during a period of time from January to March of 2014.

On June 5, 2017, Mr. Castro, who had remained in custody since the time of his arrest, pled guilty to count one of the indictment, which charged him with the use of an interstate facility to persuade a minor to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b). Through the plea agreement, the parties stipulated to the following statement of offense conduct:

> The defendant met a minor ("MV"), a 15-year-old girl, through the online game "Chess With Friends." Through the use of electronic devices, including a computer, the defendant and MV exchanged photographs and videos that included material constituting child pornography, and which was transmitted electronically to the defendant in Illinois. Subsequently, through the use of a facility of interstate commerce, namely, a cellular phone and Internet-based messaging and video chatting services, the defendant enticed MV, who he knew to be 15 years of age, to engage in sexual activity for which any person can be charged with a criminal offense, namely, Title 18, United States Code, Section 2251(a) (sexual exploitation of children) and Connecticut General Statutes, Section 53a-71 (sexual assault in the second degree). Specifically, the defendant travelled from Illinois to Connecticut

and engaged in sexual intercourse with MV. The defendant maintained multiple sexually explicit photographs and videos of MV in his email account, on his phone and on his laptop computer. [JA22]

The Government conducted a search of Mr. Castro's electronic media seized in connection with his arrest. The Presentence Report (PSR) discloses no other inappropriate contact with minors or possession of any inappropriate sexual material by Mr. Castro. *See* Sealed Documents (SD) 20 – 26. Indeed, the PSR reflects that outside of the offense in this case, Mr. Castro—who has had a long professional career consulting in workforce management and cultural outreach— has no criminal history points at all (his sole prior encounters with law enforcement relate to motor vehicle matters). SD29.

The parties' plea agreement also included a set of stipulated proposed special conditions of supervised release, including a condition that:

The defendant shall agree that any device that he uses with Internet access, including a computer, will be equipped with monitoring software that will permit the United States Probation Office to determine whether he has been in contact with minors, either through email, chat rooms, instant messaging, or any other electronic means.

[FN1] The defendant shall pay all, or a portion, of the costs associated with computer monitoring based on his ability to pay, in an amount to be determined by the United States Probation Office[.] [FN1: Narrowly tailored to conform to *United States v. Lifshitz*, 369 F.3d 173 (2d. Cir. 2004).] [JA 24]

The PSR, in turn, included a number of special conditions of release proposed by the United States Probation Office. With respect to computer monitoring, the PSR proposed a set of three conditions:

[1] The defendant shall submit all photographic equipment, personal computers, media storage devices, or other Internet capable devices and related equipment, owned, controlled or used by them to a compliance review conducted by the U.S. Probation Office or its designee at a reasonable time and reasonable manner without prior notice, and without suspicion or search warrant. The defendant will also permit the Probation Office to install and use monitoring programs on all such equipment, and will allow the U.S. Probation Office to use such equipment as is necessary to determine the presence of an Internet/Wi-Fi connection. The defendant shall pay all or a portion of the costs associated with such equipment based upon the defendant's ability to pay, as determined by the Probation Office.

[2] The defendant shall submit their person, residence, vehicle, all photographic equipment, personal computers, media storage devices, or other Internet capable devices and related equipment, owned, controlled or used by the defendant, to a search, conducted by a United States Probation Officer, at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

[3] The defendant shall not download, install, or utilize any application, software, or hardware that will prevent the U.S. Probation Office from monitoring the defendant's computer activity. This includes, but is not limited to, encryption, anonymity or invisible mode software or devices, or dark web Internet browsers. [SD38]

Defendant lodged an objection to the first of these three conditions on the grounds that it "authorize[d] invasive searches of Mr. Castro's property with absolutely no reasonable suspicion. The proposed conditions represent a nearly

4

complete prospective vitiation of Mr. Castro's 4th Amendment rights in a manner that is neither appropriate nor constitutional." SD41. The PSR Addendum indicated, in response to the objection, that the proposed condition was intended to permit a supervising probation officer to inspect the covered media without the use of forensic software. SD42.

In anticipation of sentencing, the parties submitted sentencing memoranda. Both Defendant and the Government agreed that a sentence of 120 months, the mandatory minimum, was sufficient to achieve the goals of sentencing. JA38, 102. Defendant further submitted a number of exhibits in support of the proposed sentence, including a forensic psychological and psychosexual evaluation by a licensed psychologist. The report concluded that "Mr. Castro presents with Low to Low-to-moderate level of risk to commit a sex-related offense in the reasonably foreseeable future." SD15.

At the sentencing hearing, the Court concurred with the parties' jointly proposed sentence of 120 months. In imposing this sentence, the Court explained:

> [I]t is going to be a non-guideline sentence, essentially because the parties agree to an appropriate sentence and because the government has pointed out reasons to believe that this conduct was limited, and in order to reflect the facts, in my view, that you have a low risk of recidivism because this was a one-time event and because you have shown significant remorse for what you did, because this is your first conviction really of anything serious, and because you're going to suffer the additional consequence of deportation and potentially detention in connection with your deportation from this country, I believe that the mandatory minimum sentence of imprisonment is sufficient in this case. [JA123 – 24]

The Court further indicated its intent to impose special conditions of release, including:

Nine, you shall submit all photographic equipment, personal computers, media storage devices or other Internet-capable devices and related equipment owned, controlled or used by you to a compliance review conducted by the U.S. Probation Office or its designee at a reasonable time and a reasonable manner, without prior notice and without suspicion or search warrant. You will also permit the probation office to install and use monitoring programs on all such equipment and will allow the U.S. Probation Office to use such equipment as is necessary to determine the presence of an Internet or Wi-Fi connection. You shall pay all or a portion of the costs associated with such equipment based upon your ability to pay as determined by the probation office and approved by the court. [JA127 – 28]

Defendant, in turn, objected to this condition as authorizing suspicionless searches, leading to the following exchange:

Your Honor, with respect to the conditions of release, I will note that there are two essential search conditions that the Court has imposed. One is a search upon some reasonable suspicion; one is a suspicionless, warrantless search. Defendant has objected to the second of these, the warrantless and suspicionless search, as unreasonable, and for any appellate purposes would reiterate that objection now.

THE COURT:  All right. I understood that to be your objection, and I believe that the condition is appropriate, and it will be a part of the sentence in this case. [JA129 – 30]

On September 13, 2017, the Court issued the judgment in this case, including the above condition imposed as special condition 10. JA 135. On September 18, 2017, Defendant timely appealed. JA140.

# SUMMARY OF THE ARGUMENT

Suspicionless searches of closely held personal information offend many of the bedrock principles developed to protect the Fourth Amendment right of people to be secure from unreasonable government intrusion into their papers and effects. Nevertheless, in a limited set of circumstances, such searches may be appropriate, and in the context of criminal supervision this Court has developed criteria for determining when the "special needs" of supervision warrant such searches.

Specifically, in *United States v. Lifshitz*, 369 F.3d 173 (2d Cir. 2004), this Court addressed the broad question at issue in this appeal, namely when and whether the special needs of supervision may justify suspicionless monitoring of a supervisee's computer use. *Lifshitz* established that such conditions may be appropriate—but also that they must meet strict criteria. The parties in this case stipulated to proposed conditions of release intended to conform to the criteria articulated in *Lifshitz*. Departing both from *Lifshitz* and from the proposal of the parties, the conditions imposed in this case permit sweeping, intrusive, and ill-defined searches by the United States Probation Office. This sweeping search condition should be reversed and the case remanded for imposition of computer monitoring conditions in line with the precedent of this Court.

# ARGUMENT

## I. THE DISTRICT COURT IMPROPERLY IMPOSED A SUPERVISED RELEASE CONDITION REQUIRING MR. CASTRO TO SUBMIT TO SUSPICIONLESS SEARCHES OF HIS PERSONAL INFORMATION.

### a. Conditions of Release Must Conform to Statutory Requirements.

"While 18 U.S.C. § 3583(d) authorizes a sentencing court to impose 'any other condition [of supervised release] it considers to be appropriate,'" this provision does not afford the sentencing judge "untrammelled discretion, especially in light of the more specific directions provided by the Sentencing Guidelines implementing § 3583(d) and 18 U.S.C. § 3563(b)[.]" *United States v. Abrar*, 58 F.3d 43, 47 (2d Cir. 1995).

Specifically, § 3583(d) instructs the sentencing court to consider the general sentencing factors set forth in 18 U.S.C. § 3553(a), excluding the factors relating to the need to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and to consider "the kinds of sentences available."

Section 3563(b), concerning the sentencing court's discretion in imposing conditions of probation, specifies that the court may impose a variety of conditions, but only "to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes

indicated in section 3553(a)(2)," namely to "to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."[1] 18 U.S.C. § 3553(a)(2).

**b. Conditions of Release Must Withstand Constitutional Scrutiny.**

In addition to the statutory strictures above, "special conditions of supervised release implicating constitutionally protected interests" must clear a higher bar. *United States v. Myers*, 426 F.3d 117, 125 (2d Cir. 2005). This Court has articulated that in such circumstances

> we must carefully examine [the condition] to determine whether it is "reasonably related" to the pertinent factors, and "involves no greater deprivation of liberty than is reasonably necessary," 18 U.S.C. § 3583(d), and <u>our application of these criteria must reflect the heightened constitutional concerns</u>.

*United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005) (emphasis added) (addressing condition implicating fundamental liberty interest; noting that same analysis applies to conditions involving constitutionally protected interests).

---

[1] A final consideration of § 3553(a)(2), concerning the severity of the offense, cannot be considered in determining supervised release conditions per § 3583(d).

At issue here is the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" enshrined in the Fourth Amendment to the United States Constitution. In this context,

> suspicionless searches . . . are highly disfavored since they dispense with the traditional rule that a search, if it is to be deemed reasonable, must be either supported by a warrant based on probable cause, or justified by evidence establishing individualized suspicion of criminal misconduct.

*United States v. Amerson*, 483 F.3d 73, 77–78 (2d Cir. 2007).

### c. Suspicionless Search Conditions Must Pass a "Special Needs" Test.

Although highly disfavored, release conditions entailing suspicionless searches do not categorically violate the Fourth Amendment. Rather, the jurisprudence of this Court has been that such searches may be lawful if the satisfy a "special-needs test." *Id.* at 78.

The Supreme Court in *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) articulated the basic principle of this special needs test, holding that warrantless searches may be permitted "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Id.* at 873 (internal quotation marks omitted). The *Griffin* court, in turn, applied this special needs test in the context of a warrantless search of a state probationer. Reasoning that because a state "probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society," the

Court concluded that a state probationer could lawfully be searched pursuant to a state regulation allowing a search where there was "reasonable grounds to believe" that a probationer possessed contraband. *Id*. at 879-80.

In *United States v. Lifshitz*, 369 F.3d 173 (2d Cir. 2004), this Court distilled the reasoning of *Griffin* as establishing that "under the 'special needs' doctrine . . . searches for probationary purposes will be upheld if authorized by a law that is in itself reasonable." *Id*. at 181. The *Lifshitz* Court, however, also observed that "*Griffin* does not, however, itself elaborate criteria for determining the reasonableness of a regulation." *Id*. More, because *Griffin* and other cases prior to *Lifshitz* "considered the validity of particular searches, rather than search conditions themselves," the *Lifshitz* Court was called upon, as a matter of first impression, to address the task of "[evaluating] the conformity of special conditions of probation or supervised release with the Fourth Amendment." *Id*. at 182.

At issue in *Lifshitz* was a special condition of release providing that:

> The defendant shall consent to the installation of systems that enable the probation officer or designee to monitor and filter computer use, on a regular or random basis, on any computer owned or controlled by the defendant. Upon reasonable suspicion, the probation office may make unannounced examinations of any computer equipment owned or controlled by the defendant, which may result in retrieval and copying of all data from the computer(s) and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection.

*Id.* at 177 n.3. Post-judgment clarification confirmed that the intent of the order was that the monitoring described in the first sentence of the order was to occur even absent reasonable suspicion. *Id.* at 178.

The *Lifshitz* court proceeded review "special needs" searches authorized in other contexts. Focusing first on drug-testing conditions authorized by the Supreme Court in the context of public education and public employment, the Court discerned "three principal criteria in assessing whether a 'special need' justifies a search, *id.* at 186, namely:

> [1] First, the government must allege a "special need," the importance of which derives both from the particular context in which it seeks to implement searches—whether that of the vulnerability of school children or the sensitive employment situation of certain customs officials—and what the searches are designed to discover . . . .
>
> [2] Secondly, those subject to the search must enjoy a diminished expectation of privacy, partly occasioned by the special nature of their situation, and partly derived from the fact that they are notified in advance of the search policy.
>
> [3] Third, the search program at issue must seek a minimum of intrusiveness coupled with maximal effectiveness so that the searches "bear a close and substantial relationship" to the government's "special needs." [*Id.*]

Applying these criteria in the context of computer monitoring as a condition of probation, the *Lifshitz* court held that "[i]n order to comply with the requirements of the Fourth Amendment, the monitoring condition must be narrowly tailored, and not sweep so broadly as to draw a wide swath of extraneous material into its net." *Id.* at 190. Further, although it need not represent the "least

intrusive" means of achieving a governmental interest, "the means employed must bear 'a close and substantial relation,' [*Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 676 (1989)], to the government's interest in pursuing the search." *Id*. at 192.

Applying this standard to the condition at issue, the court observed that the closeness of the fit between the search and the "special need" depended upon the nature of the monitoring. Comparing the condition to the drug screening authorized in other contexts by the "special needs" analysis, the Court explained:

> Constant inspection of the documents that Lifshitz creates on his computer might be more like searching his diary or inspecting his closets than it is like the highly targeted diagnosis accomplished by drug testing. By contrast, software that alerted a probation officer only when Lifshitz was engaging in impermissible communications over e-mail or the Internet would bear much greater resemblance to screening a probationer's urine for particular drugs ….

*Id*. at 191–92 (citation omitted).

In light of the contrasting implications of different monitoring methods, and the fact that "[t]here [was] very little information in the record about what kind of monitoring the probation condition authorizes," *id*. at 190, the *Lifshitz* court concluded that "[t]he scope of the monitoring condition may, therefore, be overbroad, and it is not clear from the record as it stands whether or not monitoring is sufficiently effective to justify its implementation." *Id* at 193. Accordingly, the Court remanded with instruction to the district court to "evaluate the privacy implications of the proposed computer monitoring techniques as well as their

efficacy as compared with computer filtering, and then to impose a condition consistent with this opinion." *Id.*

On remand, the district court imposed the following condition:

> The dft is not to use a computer, Internet-capable device, or similar electronic device to access child pornography or to communicate w/any individual or group for the purpose of promoting sexual relations w/children. The dft shall consent to the use and/or installation of a computer program which shall monitor suspect computer use on any computer owned or controlled by the dft. The program(s) used will be designed to identify for the probation office only the viewing, downloading, updoading, transmitting, or otherwise using any images or content of a sexual nature ('suspect computer use'). Suspect computer use shall be identified by the installed program(s) and/or the probation officer through the screening of the dft's computer usage for certain key words, phrases, and images.

*United States v. Lifshitz*, 1:01-cr-00203-RPP, DE #48 (S.D.N.Y. July 7, 2004). No further appeal followed.

Subsequent to *Lifshitz*, the Supreme Court in *Samson v. California*, 547 U.S. 843 (2006), applied a general balancing test—rather than the "special needs" test to determine the validity of a suspicionless search of a parolee. This Court, however, has affirmed that *Lifshitz* remains the governing law with respect to searches of non-parolees. In *United States v. Amerson*, 483 F.3d 73 (2d Cir. 2007), the Court explained:

> [N]othing in *Samson* suggests that a general balancing test should replace special needs as the primary mode of analysis of suspicionless searches outside the context of the highly diminished expectation of privacy presented in *Samson*. . . . Because the Supreme Court has not, to date, held that the expectations of privacy of probationers are sufficiently diminished to permit probationer suspicionless searches to be tested by a general balancing test—

and, to the contrary, in Samson the Court expressly acknowledged that probationers have a greater expectation of privacy than the parolees—Samson does not require us to reconsider our holding in *Lifshitz*.

*Id*. at 79. Shortly after *Amerson*, another panel of this Court addressed an appeal that differed from "*Amerson* only in that [the appellants] were sentenced to supervisory release following a period of imprisonment, rather than to probation." *Malvasi v. U.S. Dep't of Prob*., 246 F. App'x 11, 13 (2d Cir. 2007). The panel, in a summary order, observed that "individuals under supervised release have, if anything, a lesser reasonable expectation of privacy than individuals on probation" and that "[t]he analysis in *Amerson* . . . therefore applies with full force to the Appellants herein and its holding determines the outcome of each of these appeals." *Id*.

### d. The Suspicionless Search Condition Here Fails the *Lifshitz* Test.

The parties in this case stipulated to conditions of release that included, as is now standard in the District of Connecticut, a condition that Mr. Castro must "agree that any device that he uses with Internet access, including a computer, will be equipped with monitoring software that will permit the United States Probation Office to determine whether he has been in contact with minors, either through email, chat rooms, instant messaging, or any other electronic means." JA24. That proposed condition, moreover, was expressly tailored to comply with the directives of *Lifshitz*.

Consistent with *Lifshitz*, this condition proposed by the parties addressed the particular concerns of the present case: Mr. Castro had used internet-enabled devices to carry on inappropriate interactions with a 15-year-old, and the proposed condition permitted monitoring focused on detecting any similar interactions with minors. This condition is consequently, "like the highly targeted diagnosis accomplished by drug testing" approved by *Lifshitz*. *Lifshitz*, 369 F.3d at 192.

### 1. The search condition authorizes broad suspicionless searches of materials at the heart of Fourth Amendment protections.

In sharp contrast to this focused monitoring condition above, the further condition proposed by Probation and ordered by the sentencing judge permits a probation officer, "without prior notice and without suspicion or search warrant" to inspect "all photographic equipment, personal computers, media storage devices or other Internet-capable devices and related equipment owned, controlled or used by" Mr. Castro. JA127. This order, in short, permits Probation to inspect at any time, the contents of any computer, phone, camera, handheld gaming device, fitness tracker, audio recorder, thumb driver, CD, DVD, VHS, cassette tape, or even vinyl record.

It is axiomatic that "protection of [one's papers and effects] from state intrusion lies at the heart of the Fourth Amendment." *Florida v. Jimeno*, 500 U.S. 248, 253 (1991). As this Court has recognized, "[t]hese Fourth Amendment protections apply to modern computer files. *United States v. Ganias*, 755 F.3d 125,

16

135 (2d Cir. 2014). Indeed, in light of the enormous breadth and volume of personal information computer hard drive contain, the Fourth Amendment may afford even more protection to computer files than to the relatively modest amount of information stored on the "papers" contemplated in the Constitution:

> Like 18th Century "papers," computer files may contain intimate details regarding an individual's thoughts, beliefs, and lifestyle, and they should be similarly guarded against unwarranted Government intrusion. **If anything, even greater protection is warranted**.

*Id.* (emphasis added). The proposed search condition, consequently, goes to the heart of the material protected by the Fourth Amendment.

### 2. *The special needs of supervision are relatively attenuated in this case.*

As discussed above, *Lifshitz* has established standards for determining when a search of this sort may be permitted absent the specific indicia of criminal wrongdoing typically required by the Fourth Amendment. The first of these requirements is that the "the government must allege a 'special need,' the importance of which derives both from the particular context in which it seeks to implement searches . . . and what the searches are designed to discover[.]" *Lifshitz*, 369 F.3d at 186.

As the Supreme Court has recognized, in the context of probation "[s]upervision . . . is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Griffin v. Wisconsin*, 483 U.S. at 875. This "special need," by definition,

must be "beyond the normal need for law enforcement[.]" *Id*. at 873 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in judgment)).

Put otherwise, if the purpose of a search is to uncover criminal wrongdoing by the person being searched, then the search cannot be justified by the "special need" doctrine. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 41 – 42 (2000) (striking down an automobile checkpoint program "whose primary purpose was to detect evidence of ordinary criminal wrongdoing"); *Ferguson v. City of Charleston*, 532 U.S. 67, 83 – 84 (2001) (hospital program that tested patients urine for cocaine use unconstitutional because the "immediate objective of the searches was to generate evidence for law enforcement purposes"). *Cf. Illinois v. Lidster*, 540 U.S. 419, 423 (2004) (highway checkpoint constitutional where purpose was to seek information from potential witnesses, rather than suspect, of crime).

This categorical divide between searches seeking incriminatory evidence and special needs searches is a fundamental precondition of the "special needs" doctrine's existence at all. As this Court has explained,

> [A]s in all cases in which there is a special need, what makes the government's need . . . "special," despite its relationship to law enforcement, is (as a matter of first principles) its incompatibility with the normal requirements of a warrant and probable cause, and, especially, the corollary that the nature of the search involved greatly attenuates the risks and harms that the warrant and probable cause requirements are intended to protect

> against. As Judge Lynch explained in his concurrence in [*Nicholas v. Goord*, 430 F.3d 652 (2d Cir. 2005)], "special needs" have been found "not because the rules [of warrants and probable cause] are inconvenient to follow," but rather "because in such situations, the rules are not needed to prevent the mischief that they are designed to prevent." Nicholas, 430 F.3d at 680 (Lynch, J., concurring).

*Amerson*, 483 F.3d at 82. The operative word that makes a "special need" search constitutional, that is to say, is not the "need" for effective inspection, but rather the "special" circumstances that place the search beyond the risk of abuse by law enforcement that the framers of the Constitution rightly feared.

In the context of supervision, the "special" justifications articulated in *Lifshitz* are deterrence from further criminal conduct, rehabilitation of the supervisee, and eradication of child pornography. *Lifshitz*, 369 F.3d at 189. With respect to deterrence, the *Lifshitz* court asserted that "there is a high rate of recidivism among sex offenders," *id.*, an empirical statement for which the Court relied on *Roe v. Marcotte*, 193 F.3d 72, 79 (2d Cir. 1999) (observing that "defendants cite studies indicating a high rate of recidivism among sexual offenders").

In this case, the "special needs" inherent in supervision apply here, but because of the particular features of the case, they apply with less force than was assumed by the *Lifshitz* court. As materials submitted by the parties showed, and as the sentencing judge specifically found, Mr. Castro has "a low risk of recidivism because this was a one-time event[.]" JA123. The offense conduct in this case had

concluded years before Mr. Castro's arrest, and there is no indication that he engaged in similar conduct before or after the offense period. Other than images involved in the offense, child pornography was recovered in searches of Mr. Castro's devices.

### 3. Mr. Castro's expectation of privacy is limited by his status.

The second consideration under *Lifshitz* is that "those subject to the search must enjoy a diminished expectation of privacy, partly occasioned by the special nature of their situation, and partly derived from the fact that they are notified in advance of the search policy." *Lifshitz*, 369 F.3d at 186. Here, Mr. Castro will enjoy a diminished expectation of privacy as a result of his status on supervised release, satisfying this consideration. *See United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002) (holding "special needs" principles in *Griffin* "apply a fortiori to federal supervised release, which, in contrast to probation, is meted out in addition to, not in lieu of, incarceration" (internal quotation marks omitted)).

### 4. The sweeping search condition is maximally intrusive and minimally effective—the opposite of Lifshitz's instruction.

The final consideration is that there must be a close fit between the special need and the search condition: "the search program at issue must seek a minimum of intrusiveness coupled with maximal effectiveness so that the searches bear a close and substantial relationship to the government's special needs." *Id*. (internal quotation marks omitted). Here, the condition imposed decisively fails the special

needs test, far overshooting the mark with respect to intrusiveness and promising minimal, if any, additional deterrence.

With respect to intrusiveness, the proposed condition is nearly the exact opposite of the sort of targeted drug testing that *Lifshitz* held up as a model of acceptable "special need" searches. Instead, the proposed condition, which the United States Probation Office interprets as authorizing "checks of . . . devices, to determine if the defendant is in compliance with conditions of supervised release, may help the supervising officer identify areas where a formal forensic search would be appropriate," SD42, invites potentially extensive—and untargeted— rummaging by Probation officers into the most private and intimate recesses of a Mr. Castro's digital life. It permits Probation officers to inspect it is, in short, "more like searching his diary or inspecting his closets than it is like the highly targeted diagnosis accomplished by drug testing"—precisely the mode of searching *Lifshitz* warns against. 369 F. 3d at 191.

The intrusiveness of the rummaging authorized by the search condition, further, does not appear to offer much—if any—additional deterrence over and above what would be accomplished by the monitoring condition jointly proposed by the parties. First, because Mr. Castro's offense was limited in scope and exclusively concerned his interactions with another person (rather than, say, the storage of a substantial quantity of illicit material), it is far from clear that there is

any need to deter Mr. Castro from possessing material on his computer. Mr. Castro's crime was about communication, and so a condition permitting software to monitor communication is much more appropriately tailored to this case than is a condition allowing unfocused rummaging by a Probation officer into private files that the officer has no reason to believe were ever shared with anyone.

Second, even if deterrence were necessary, there is no indication that the sort of compliance reviews contemplated by the condition would accomplish this goal. Extensive searches of entire hard drives in child pornography cases have been held appropriate, for example, precisely because "criminals can easily alter file names and file extensions to conceal contraband." *United States v. Stabile*, 633 F.3d 219, 239 (3d Cir. 2011). Permitting an untrained but inquisitive human investigator to hunt through a computer is invasive—but it is also imprecise and likely ineffective.

## II. THE MONITORING CONDITION IS OVERBROAD AND VIOLATES *LIFSHITZ*.

In principle, Defendant does not disagree with the Court's imposition of a computer monitoring condition. Indeed, such a condition is included in the parties' stipulated proposed conditions. Specifically, the parties stipulated that Mr. Castro should be required to "agree that any device that he uses with Internet access, including a computer, will be equipped with monitoring software that will permit the United States Probation Office to determine whether he has been in contact with minors, either through email, chat rooms, instant messaging, or any other

electronic means." JA 24. This condition was expressly intended to be "[n]arrowly tailored to conform to [*Lifshitz*]." *Id.*[2]

The condition imposed by the Court, however, contains no such tailoring. Rather, the monitoring portion of the condition to which Defendant objected simply states that "[y]ou will also permit the probation office to install and use monitoring programs on all such equipment and will allow the U.S. Probation Office to use such equipment as is necessary to determine the presence of an Internet or Wi-Fi connection." JA127.

Like the condition that occasioned a remand in *Lifshitz*, the condition here provides "very little information . . . about what kind of monitoring the probation condition authorizes." *Lifshitz*, 369 F.3d 190. Indeed, the condition imposed here

---

[2] On remand, the sentencing judge would have the option, consistent with *Lifshitz*, of deferring determination of the contours of the monitoring condition in light of the likely technological and other developments over the course of Mr. Castro's 10-year sentence. Per *Lifshitz*:

> Were this, however, a case involving supervised release, or if there were any reasons why the commencement of the defendant's term of probation would be substantially delayed, it might well be prudent for the district court to postpone the determination of the supervised release or probation conditions until an appropriate later time, when the district court's decision could be based on then-existing technological and other considerations.

*Lifshitz*, 369 F.3d 193 n.11.

closely tracks the generic language of the condition imposed in *Lifshitz*, which provided that "the defendant shall consent to the installation of systems that enable the probation office or designee to monitor and filter computer use, on a regular or random basis, on any computer owned or controlled by the defendant." *Id.* at 190 – 91. For the same reasons that a remand was required in *Lifshitz*, greater specificity is required here to ensure that the monitoring condition bears a close and substantial relationship to the specific special needs of supervision raised by this case.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's imposition of the supervised release condition #10 as enumerated in the written judgment and remand this case for resentencing as to this condition.

Dated: January 8, 2018

Respectfully submitted,

TERENCE S. WARD
FEDERAL DEFENDER
DISTRICT OF CONNECTICUT

/s/ James P. Maguire
Assistant Federal Defender

## **CERTIFICATIONS**

The undersigned counsel certifies that this brief complies with the type-volume limitations set forth by Rule of Procedure 32(a)(7)(B) governing practice before this Court, in that there are 6,141 words in this brief. The undersigned counsel further certifies that the foregoing has been served on counsel for all parties via the Court's CM/ECF system on the date reflected on the case docket.

/s/ James P. Maguire
Assistant Federal Defender
